Judge Wood
stated the case, and delivered the opinion of the court
The bill, m this case, was filed February 1,1834, and states that the complainant and said Robson, on January 18, 1827, purchased of Perkins lots 174 and 175 in Akron, and took a certain contract which is set out in the bill.
*By this contract Fuller and Robson agreed to purchase the lots at three hundred dollars, and made, at the execution thereof, a payment of two hundred dollars, in a note against one Beecher and Sloa-ne, and one hundred dollars by the 1st of July next, thereafter, with interest thereon; and for this last note they executed their joint and several note. They also agreed to erect on one of the lots a brick or stone house suitable for a tavern, to pay all taxes, and prosecute the building of the house, as their *490 means would permit; and when the walls of the house were up, the roof on, and the one hundred dollars paid, Perkins was to give a deed. The bill further states that the defendant, Perkins, has collected the two hundred dollars for his use; that in consequence of losses and failures of contractors, and Robson’s pecuniary inability, he could not commence building the house until June 10, 1832, when he commenced preparing the foundation and procuring materials, and from thence till May 10, 1833, continued to prosecute the building, as his and Robson’s means would permit, and would have finished the house, but was forbidden by the defendant, Perkins, on the aforesaid May 10, 1833. The bill states that the complainant has paid the one hundred dollars and has tendered the amount of all taxes, since the contract was executed, to said Perkins. That Robson, on September 26, 1833, sold all his interest in the land to the complainant. That Perkins, on May 10, 1833, commenced an action oi ejectment against the complainant to recover the possession of the said lots. That the complainant has demanded a deed of Perkins; and that he should discontinue the ejectment — both of which the defendant, Perkins, refused. The bill prays for a specific execution of the contract or a compensation in damages, and that the action of ejectment may be enjoined.
The answer of Perkins admits the contract denies the collection of the two hundred dollars for his use, but states, before the money was collected, Robson was the sole owner of the note, and directed Wells, the agent of Perkins, and who made the con- • tract for the sale of the lots, to collect the money and forward it to him in Pennsylvania; and that by letter of January 22, 1830, which directed the avails of the note to be remitted to him, Robson expressly abandoned the contract; and a copy of this letter containing such instructions and abandonment is contained in and made part of the answer.
*The defendant denies that anything of consequence toward building a house in pursuance of his contract has been done by the complainant. The defendant admits he has commenced an action of ejectment as stated by complainant, and alleges that he has received but forty dollars on the one hundred. He admits that the complainant paid to his clerk seventy-seven dollars sixty cents, which the clerk had no authority to receive, but was induced to do so by the fraudulent representations of the complain *491 ant, and which payment, was after the contract had been forfeited by both the complainant and Robson. The answer also admits the tender of the amount of taxes of fourteen dollars forty-four cents, and avers that the defendant directed his agent,Wells, to refund the forty dollars and the seventy-seven dollars sixty cents, which he has offered to do, and is still ready to refund. The defendant denies all knowledge of' any assignment by Robson to complainant of the contract, but insists, if made, it was fraudulent and alter the contract was abandoned. The defendant states that the advancement of the town of Akron was the principal inducement to make the contract with the complainant, and the erection of a building for a tavern the most important consideration for the sale of the lots.
The answer insists that the complainant has been guilty of gross neglect, which, by his letter of January 14, 1828, he acknowledges, and that the excuses set forth in his bill for not performing his contract are frivolous and merely pretenses, and denies all fraud.
' The complainant has filed a replication, and submitted to us the depositions of Carter, Mills, Jarvey, Yiers, Babcock, Ayres, Sprague, and Hand. There is, however, but little in these depositions to aid him. They generally relate to his pecuniary inability to pay for the lot when his note became due, or to make any progress in the erection of the building. One witness, however, Yiers, states that in 1827 he contracted with Fuller to make brick, and received a mare in payment; that Fuller went off to Pennsylvania and he heard no more of him until he was sued for the mare.
So far as I have been able to dissect the evidence in this case, it seems to be entirely with the defendant. Wells, who was the agent and made the contract, testifies that Puller, the complainant, represented that he had a brother in New York able and willing to assist him, and who had in his hands ^seventeen or eighteen hundred dollars of his property, and that Robson was reported to be worth three or four thousand dollars, and that a belief in their means and ability to make the payments and build the house was the principal motive to make the contract. It is very evident that Wells was deceived, and that the complainant and Robson could, at the time, have entertained no well-grounded hopes of meeting their engagements. Wells testifies that Robson, *492 soon after the contract was executed, went to Pennsylvania, and the complainant followed him in the fall of 1827, without any preparation to build, otherwise than a contract with Viers for brick, and the balance of the one hundred dollar note was due in July before complainant left. Fuller returned in the winter of 1830, but Robson has remained absent. Wells says, in the early part of 1828, he notified Fuller and Robson that if they did not perform their contract it would be considered forfeited. In 1830 Fuller returned, and shortly after the witness received a letter from Robson, abandoning the contract, and directing the amount of the note against Beecher and Sloane to be sent to him, to which Perkins assented. Fuller did nothing toward building until 1833, when ho commenced preparing for the foundation, when witness forbade him, and has frequently informed him the defendant considered the contract as abandoned and forfeited on the part of him and Robson, and that no more payments would be received. In the spring of 1832 Fuller offered to pay up the one hundred dollar note, which the witness refused, and referred him to the defendant, and gave him a memorandum of the amount, etc., and witness offered to refund to Fuller what he had paid, with interest, which he refused. In 1831 this witness states property began to rise in Akron. Fred. Rusman testifies he was a clerk for Gen. Perkins, and Fuller came there in the absence of Perkins and with the memorandum from Wells, and induced him to take the money duo on the one hundred dollars, but Perkins would not sanction the act.
This, then, is substantially the case, and it is submitted for our consideration whether this contract shall be specifically executed, and it seems to me there are two grounds, either of which is sufficient to prevent the chancellor from an interference to compel its specific execution.
1. The evidence most clearly proves a gross misrepresentation of their means and ability to perform their contract, and *by which they preyed upon the credulity of the agent, and induced him to enter into it. These representations, were such that the agent had the right to rely on them. He could not ascertain their truth or falsity but by the most diligent inquiry in New York, where their means was said to be. This would occasion delay and inconvenience, and the law permits a man to rely on statements made by another under such circumstances. The representations *493 made by Fuller, the complainant, were grossly fallacious, and even a fraud and imposition on the agent, and the principal, Perkins, should not be bound by the contract, founded and executed upon them. 1 Mad. Ch. 204, 208, 209, 329-331.
2. The complainant has been guilty of gross negligence on his part, and to him equity will not lend its aid. Robson left Ohio soon after the contract was executed, and afterward expressly abandoned it, having made no payment nor performed any part of his agreement from that day to this. Fuller, the complainant, followed him out of the state in the fall of 1827, forty dollars only having been paid on the contract, and nothing is heard from him excepting by letter, in which he speaks of his embarrassments and inability to perform for two years, until he returns in 1830. He then does nothing toward building until 1833, when the land had risen in value, and he prepares for the foundation of the house. This is five years after the contract was entered into, nearly that after the payments became due, and this same work should have been commenced. A party, to entitle himself to a specific execution of a contract, must show himself eager, prompt, and ready to comply on his part.
The law is not made for the sleeping, but for the vigilant and watchful. Decree for complainant for forty dollars, seventy-six dollars and sixty cents, but without costs, and the specific execution of the'contract denied. As to Robson, bill dismissed without costs.